# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-2818-GW(GJSx) | Date | July 18, 2019 |
| Title | *Katherine Kobren v. Total Terminals International, LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie E. Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Laura P. Birnbaum

Attorneys Present for Defendants:

Cheryl A. Sabnis
Ramon A. Miyar
Jennifer B. Zargarof

**PROCEEDINGS:** **PLAINTIFF'S MOTION TO REMAND [11];**

**SCHEDULING CONFERENCE**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Plaintiff's Motion is TAKEN UNDER SUBMISSION. Court to issue ruling.

The scheduling conference is taken off-calendar to be reset if necessary.

: 11

Initials of Preparer  JG

<u>**Kobren v. Total Terminals Int'l, LLC, et al.**</u>, Case No. 2:19-cv-02818-GW-(GJSx)
Tentative Ruling on Motion to Remand Plaintiff's Complaint and Award Attorney Fees Pursuant to 28 U.S.C. § 1447(c)

**I.     Background**

   A.  <u>Introduction</u>

   Plaintiff Katherine Kobren ("Plaintiff") asserts state law violations of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900 *et seq.*, against Defendants Total Terminals International, LLC ("Defendant"), Pacific Maritime Association[1], and Does 1-100 for: (1) disability discrimination; (2) gender discrimination; (3) age discrimination; (4) failure to prevent discrimination; and (5) wrongful termination in violation of public policy ("wrongful termination").  *See generally* Plaintiff's Complaint for Damages ("Complaint"), Docket No. 1, Ex. A.  Plaintiff also asserts a common-law claim for intentional infliction of emotional distress ("IIED").  *See id.*

   B.  <u>Factual Background</u>

   Plaintiff alleges the following relevant facts:

   Beginning in late 2002, Plaintiff worked for Defendant in the largest terminal in the United States as a "steady" foreman on the waterfront, earning approximately $220,000 per year.  *See id.* ¶¶ 10-11.  Plaintiff was a member of the International Longshore and Warehouse Union Local 94 (the "Union").  *See id.* ¶¶ 11, 14; *see also* Defendant Total Terminals' Notice of Removal and Removal of Civil Action to Federal Court Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 (Federal Question Jurisdiction) ("Removal"), Docket No. 1, ¶ 14.  Plaintiff was the only female foreman at the site, and she alleges that over the course of her thirty-one year career, she was never disciplined or written up before the events that led to her termination.  *See* Complaint ¶ 11.  At the time of her termination, Plaintiff was sixty-one years old and planned to work at least another five years and four months.  *See id.* ¶ 13.

   In her role, Plaintiff monitored other employees' work to ensure adherence to the schedule

---

[1] Pacific Maritime Association is an organization comprised of various maritime companies, including Defendant. *See* Defendant Total Terminals' Notice of Removal and Removal of Civil Action to Federal Court Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 (Federal Question Jurisdiction) ("Removal"), Docket No. 1, ¶ 15-16.  Its principal business is to negotiate and administer maritime labor agreements with the International Longshore and Warehouse Union on behalf of its member companies.  *See id.* ¶ 15.

and safety code; she arrived an hour before the other employees and stayed until the last one left at the end of the day. *See id.* ¶ 12. Allegedly, one of Plaintiff's two male supervisors effectively disregarded Plaintiff's role as a middleman between management and the labor force by telling Plaintiff's employees not to talk to Plaintiff because she would not be at the company much longer. S*ee id.* ¶ 25. Both of Plaintiff's male supervisors would ask for and then disregard Plaintiff's opinion in crane operator hiring decisions; they would also strike deals to re-hire employees who they had previously instructed Plaintiff to fire. *See id.* ¶ 24. Plaintiff was also the last to know about changes in operations that directly affected her job. *See id.*

In October 2015, unbeknownst to Plaintiff, the Union began enforcing a rule – promulgated in 2010 – requiring steadies to personally call the Union Hall so that the Union Hall could directly send a replacement in the event the steady calling in was unable to attend work ("Union Rule I"). *See id.* ¶ 17. According to Plaintiff, Defendant directed her instead to report her upcoming absences to her supervisor, who would in turn select one of Defendant's employees to substitute for Plaintiff. *See id.* ¶ 18.

In January 2016, Plaintiff's Lyme disease diagnosis caused her to take approximately four months off from work. *See id.* ¶ 14. While Plaintiff was on leave, Defendant continued to pull directly from its own employees, rather than the Union Hall, to substitute for Plaintiff. *See id.* ¶ 20. During Plaintiff's leave, the Union also began enforcing a second rule – promulgated in the 2014 Pacific Coast Walking Bosses and Foremen's Agreement – requiring a steady be paid for fifty hours of work per week, even if that steady in fact worked less than fifty hours per week ("Union Rule II"). *See id.* The Union had its members sign a roster indicating they received notification of the enforcement of Union Rule II. *See id.* ¶ 15. Because Plaintiff was on disability leave at the time, she did not then become aware of the enforcement of Union Rule II. *See id.* When she returned to work in May 2016, Defendant consistently shorted Plaintiff the full fifty hours, but continued to pay her only for the hours she did in fact work. *See id.* ¶ 16.

In December 2016, Plaintiff became aware of the enforcement of Union Rule I, and immediately complied. *See id.* ¶ 21. In 2017, she became aware of the enforcement of Union Rule II when she signed the notification acknowledgment roster. *See id.* ¶ 15.

In January 2017, the Union charged Plaintiff with violating Union Rules I and II over a total of fifteen months, from October 2015 to December 2016. *See id.* ¶ 22. Subsequently, the Union suspended Plaintiff for twenty-nine days. *See id.* Allegedly, Defendant typically allowed

employees to return to work after a Union-imposed suspension. *See id.* ¶ 23. For instance, Plaintiff was aware of male and/or younger employees who violated their unions' rules in the same manner as Plaintiff and returned to work at the end of their twenty-nine-day suspensions. *See id.* ¶ 26. However, Defendant terminated Plaintiff on her eighth day of suspension, citing "unavailability" as the cause. *See id.* ¶ 23. Plaintiff alleges that Defendant hired two younger males to replace Plaintiff and another employee who Defendant unrelatedly terminated at the same time as Plaintiff. *See id.* ¶ 27.

C. Procedural Background

On February 1, 2019, Plaintiff filed the Complaint in California Superior Court ("state court"). *See generally id.; see also* Removal ¶ 1. On April 11, 2019, Defendant filed a notice of removal to this Federal Court. *See generally* Removal. On May 13, 2019, Plaintiff filed a motion to remand the case back to the state court and for an award of attorney fees in connection with this motion's filing. *See generally* Plaintiff's Notice of Motion and Motion to Remand; Request for Attorneys' Fees ("MTR"), Docket No. 11, at 15. On May 23, 2019, Defendant filed an opposition to that motion. *See generally* Defendant Total Terminals' Amended Opposition to Plaintiff's MTR ("Opp'n"), Docket No. 19. On May 30, 2019, Plaintiff filed a reply. *See generally* Plaintiff's Reply to Opp'n ("Reply"), Docket No. 24.

II. **Legal Standard**

"Federal courts are courts of limited jurisdiction," and have subject matter jurisdiction only to the extent "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136-37 (1992); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)). 28 U.S.C. § 1441 permits defendants to remove certain civil actions brought in a state court to federal district courts. The removal statute is strictly construed against removal jurisdiction, however, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988); *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985); *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)). "Generally, [a] defendant has

the right to invoke federal removal jurisdiction if the case *could* have been filed originally in federal court (i.e., on diversity or federal question grounds)." Phillips & Stevenson, *Federal Civil Procedure Before Trial* § 2:2192 (Rutter Grp. 2019); *see also Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir. 1977). Federal district courts have original jurisdiction in actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If subject matter jurisdiction is lacking, the district court must remand the case to state court. 28 U.S.C. § 1447(c).

Some federal statutes foreclose district courts from remanding state-law claims concerning labor disputes. *See Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000). Such statutes completely preempt the use of state law in these instances, characterizing the claim as "federal" from inception. *See id.* A finding of "complete preemption" is a jurisdictional inquiry based on the legal character of the complaint-as-pleaded. *See id.* at 1106-07; *see also Matson v. United Parcel Serv., Inc.*, 840 F.3d 1126, 1132 (9th Cir. 2016). The doctrine of complete preemption therefore differs from a defense of preemption, which is an insufficient basis for removal to federal court. *See Balcorta*, 208 F.3d at 1106.

For Instance, section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185, confers federal subject matter jurisdiction upon – *i.e.* completely preempts – disputes arising from "alleged violations of contracts between employers and labor organizations." *See Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 747 (9th Cir. 1993). The LMRA forum preemption inquiry "is not an inquiry into the merits of a claim; it is an inquiry into the claim's legal character – whatever its merits – so as to ensure it is decided in the proper forum." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 924 (9th Cir. 2018). "In conducting the preemption analysis, [a federal court] may no more invade the province of the state court to resolve a state law claim over which [a federal court] lacks jurisdiction than [a federal court] may invade the province of the labor arbitrator to construe the CBA." *See id.*

**III. Discussion**

   A. <u>Motion to Remand</u>

      1. <u>FEHA Claims: Disability, Gender, Age, and Failure to Prevent Discrimination</u>

Courts in the Ninth Circuit apply a two-part test to determine whether a state-law claim is completely preempted by the LMRA. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). First, a court must determine if the claim at issue involves a right *conferred upon* an employee by state law or by a collective-bargaining agreement ("CBA"). *See id.* If a CBA

4

refers to the right at issue, or a plaintiff's claim relies in part on a CBA's terms of employment, or a plaintiff's cause of action runs parallel to a CBA violation or invites the use of a CBA in a defense, complete preemption under the LMRA does not automatically apply where a state law gives rise to the right at issue in a plaintiff's claim. *Schurke*, 898 F.3d at 921. Here, five of Plaintiff's claims arise under FEHA, which explicitly establishes the "right to employment without discrimination . . . as a public policy of the state." *See Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1528 (9th Cir. 1995); *see also Ramirez*, 998 F.2d at 748 ("The rights conferred by FEHA are defined and enforced under state law without reference to the terms of any collective bargaining agreement."). Plaintiff's IIED claim is derivative of her FEHA claims.

Second, a court determines whether the resolution of a plaintiff's claims that, as here, arise under state law, nonetheless substantially depend on an analysis of a CBA. *See Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001). A claim's resolution "substantially depends" on an analysis of a CBA when an *interpretation* of the CBA's terms is required. *See id.* at 691. "Interpretation . . . means something more than 'consider,' 'refer to,' or 'apply.'" *Schurke*, 898 F.3d at 921 (citation omitted). Thus, the LMRA only preempts claims "to the extent there is an active dispute over the meaning of contract terms." *See id.* (internal quotation marks omitted). For example, when a court needs to look to a CBA only to determine a plaintiff's undisputed pay rate in order to calculate damages, or to ask whether a valid waiver is anywhere to be found within a CBA, "interpretation" is not afoot. *See McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1011 (9th Cir. 2018). On the other hand, a court must interpret a CBA where the court's calculation of damages requires a determination of a plaintiff's shifts that qualify for premium pay – the guidelines for which are contained not under state law but within a CBA and are subject to an active dispute over their meaning. *See id.* at 1012.

Plaintiff asserts that the CBA between Defendant and the Union need not be consulted to resolve her claims. *See* MTR, at 9. In the Complaint, she admits to violating Union Rules I and II, and does not contest the Union's decision to punish her, nor Defendant's ability to terminate her employment for unavailability pursuant to the Letter of Understanding ("LOU")[2] between Defendant and the Union. *See* Complaint ¶¶ 16, 18, 21-23; *see also* MTR, at 5-7; Reply, at 4.

---

[2] Pursuant to the CBA's Letter of Understanding between Pacific Maritime Association and the Union, dated July 1, 2014, steady Walking Bosses and Foremen must be available to their steady employer for a minimum of fifty hours per week. *See* Removal ¶ 18. Employers are prohibited from retaining any Walking Boss or Foreman who regularly fails to meet these availability requirements for steady employment. *See id.*

Rather, Plaintiff contends that Defendant discriminated against her by purposely causing her to violate Union Rules I and II, which in turn led to her punishment by the Union, and ultimately allowed Defendant to terminate her employment using the LOU as pretext. *See* Reply, at 4-6. But Defendant argues that the allegations underlying Plaintiff's Complaint plead a federal contractual dispute requiring interpretation of the CBA, thereby satisfying the requirements for complete preemption under the LMRA and subject matter jurisdiction based upon that doctrine.[3] *See* Removal ¶¶ 14, 21.

In *Alaska Airlines Inc. v. Schurke*, the court held that the plaintiff's claims were not preempted where "the meaning of every relevant provision in the CBA is agreed upon." *See Schurke*, 898 F.3d at 927. Here, Plaintiff and Defendant appear to be in agreement with regards to the facts that Plaintiff did violate Union Rules I and II, the Union's subsequent suspension of Plaintiff on the basis of her violations was proper, and the LOU permitted Defendant to terminate Plaintiff for her suspension-based unavailability. *See* Complaint ¶¶ 16, 18, 21-23; *see also* MTR, at 5-7; Removal ¶ 24; Opp'n, at 3. Plaintiff's argument is premised upon Defendant's use of a valid termination procedure as pretext for its discrimination against her. Her claim centers not on Defendant's conduct pursuant to the CBA, but rather Defendant's discriminatory behavior toward Plaintiff, of which her termination is just one aspect. *See generally* Complaint; *see also* Reply, at 6. Thus, the resolution of Plaintiff's discrimination claims turns on such evidence of Defendant's motives, not the parties' contractual rights under the CBA. *See Matson*, 840 F.3d at 1134 (holding that the plaintiff's gender-based hostile work environment claim was not preempted where her employer's conduct served as *evidence* of its hostility toward her because of her gender).

Defendant agrees with Plaintiff on the terms of the CBA, acknowledges Plaintiff's own admission that she violated Union Rules I and II, and contends its reasons for terminating Plaintiff were non-discriminatory. However, Defendant argues that resolution of Plaintiff's claims will depend upon an interpretation of the relevant CBA provisions to determine whether Plaintiff in

---

[3] Defendant also argues that the Court should refuse to hear Plaintiff's Motion because she attempted neither to notify Defendant's counsel that she intended to move to remand, nor meet and confer with Defendant's counsel regarding the grounds for the motion, in violation of Local Rule 7-3. *See* Defendant Total Terminals' Amended Opposition to Plaintiff's Notice of Motion and Motion to Remand ("Opp'n"), Docket No. 19, at 5. But this Court has an obligation *sua sponte* to ensure that subject matter jurisdiction exists before proceeding. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (indicating that courts must assure themselves of the existence of subject matter jurisdiction before proceeding). Were the Court to summarily deny Plaintiff's Motion on the basis of her Local Rule 7-3 violation, it would nonetheless engage in the analysis herein to satisfy its obligation to ensure it has proper jurisdiction over this case. Therefore, the Court will not reject Plaintiff's Motion on this basis.

fact violated them, and whether Defendant correctly interpreted and applied the LOU to terminate Plaintiff. *See* Removal ¶ 24.[4] Yet Defendant does not direct the Court to any language or terms, the meaning of which the parties dispute, that require "interpretation." While Defendant's actions pursuant to the CBA are certainly relevant to Plaintiff's FEHA claims, Defendant – relying upon distinguishable authority[5] – fails to convince the Court that one must do more than merely refer to the relevant CBA/LOU provisions in determining Defendant's motivations behind Plaintiff's termination.

Accordingly, the Court finds that Plaintiff's disability, gender, age, and failure to prevent discrimination claims under FEHA are not subject to the "complete preemption" required to establish federal subject matter jurisdiction.

2. <u>FEHA Claim: Wrongful Termination in Violation of Public Policy</u>

A claim of wrongful termination in violation of public policy is not preempted by the LMRA if its resolution does not turn on an interpretation of a CBA, and a successful outcome would further a state interest in protecting the public. *See Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1001-02 (9th Cir. 1987). Here, Plaintiff's wrongful termination claim derives from the allegations that her termination was wrongful because it was based upon Defendant's use of otherwise-valid termination procedures as pretext for discrimination. *See* Complaint ¶¶ 64-66.

---

[4] Defendant also argues that, because the CBA provides a detailed discrimination grievance, complaint, and arbitration procedure that Plaintiff failed to exhaust prior to bringing this claim, the Court is required to hold that Plaintiff and Defendant must arbitrate Plaintiff's discrimination claims. *See* Opp'n ¶¶ 26, 28. The Court disagrees. In determining the source of Plaintiff's rights on which her claims are premised under the first part of the *Burnside* test, the Court's focus is on the legal character of Plaintiff's claim as "independent of rights under the collective-bargaining agreement [and] not whether a grievance arising from precisely the same set of facts could be pursued." *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007) (internal quotation marks omitted). Therefore, whether Plaintiff's claims could go through the CBA's grievance procedure is irrelevant to our discussion of complete preemption under the LMRA (which, in any event, is focused here on the second part of the *Burnside* test).

[5] *See, e.g., Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1113 (9th Cir. 1999) (failing to apply the current two-part *Burnside* LMRA preemption test, and holding that the plaintiff's FEHA claim was preempted by the LMRA because it was premised upon an alleged breach of contract, and not a "free-standing claim of discrimination"); *Harris v. Alumax Mill Prods., Inc.*, 897 F.2d 400, 403 (9th Cir. 1990) (same); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 239 (9th Cir. 1990) (failing to apply the current two-part *Burnside* LMRA preemption test to the plaintiff's IIED claim and finding that the plaintiff's IIED claim was preempted where he alleged that his employer's policy itself, and not merely it's pretextual application, was discriminatory); *Gonzalez v. Costco Wholesale Corp.*, No. SACV 17-02022 JVS (DFMx), 2018 WL 546679, at *4 (C.D. Cal. Jan. 22, 2018) (failing to apply the current two-part *Burnside* LMRA preemption test to the plaintiff's IIED claim and finding that the plaintiff's IIED claim was preempted where she alleged that her employer's policy itself, and not merely it's pretextual application, was discriminatory); *Pathak v. Avis Rent a Car Sys., LLC*, No. C 13-1823 JSW, 2013 WL 4082258, at *4 (N.D. Cal. Aug. 9, 2013) (finding preemption where plaintiffs' claims turned on whether their employer justifiably terminated their employment, and not whether their employer used their otherwise-justifiable termination as pretext for discrimination).

Because the Court decided that Plaintiff's discrimination claims do not require an interpretation of the CBA, it follows that her wrongful termination claim does not require an interpretation of the CBA. Moreover, the right to employment without discrimination is a public policy of the state of California. *See Jimeno*, 66 F.3d at 1528. Accordingly, the Court finds that Plaintiff's wrongful termination in violation of public policy claim under FEHA is not subject to the "complete preemption" required to establish federal subject matter jurisdiction.

      3. <u>Intentional Infliction of Emotional Distress</u>

Under California law, a plaintiff's successful IIED claim requires a showing that a defendant's conduct was "outrageous." *See Galvez v. Kuhn*, 933 F.2d 773, 779 (9th Cir. 1991). That Plaintiff's FEHA claims here are not preempted is not dispositive. The resolution of an IIED claim turns on the relationship between the plaintiff and the defendant and what constitutes "outrageous" behavior within that dynamic. *See id.* For instance, an employer may act with FEHA-condemned behavior that is nonetheless a matter of course – and therefore, reasonable – within that institution. *See id.* The requisite inquiry for an IIED claim on its merits is therefore an interpretation of an employer's behavior as to its employees' expectations. *See id.* Accordingly, only where the CBA specifically contemplates the employer's alleged behavior is it possible to engage in such an interpretation. *See Humble v. Boeing Co.*, 305 F.3d 1004, 1013 (9th Cir. 2002) (holding that where a CBA "*specifically* covers the conduct at issue, the claim will generally be preempted").[6] Defendant argues that Plaintiff's IIED claim should be preempted because it is premised upon conduct specifically covered in the CBA – the termination of her employment. *See* Opp'n, at 8. However, this is a misstatement of the conduct on which Plaintiff's IIED claim is premised.

---

[6] In their IIED arguments, neither Plaintiff nor Defendant point the Court to case law that does not pre-date *Burnside* and the current understanding of the two-part test for complete preemption under the LMRA. The Court thus recognizes the possibility that IIED claims may no longer be assessed in the foregoing manner pursuant to *Galvez v. Kuhn* and *Humble v. Boeing Co.*, particularly regarding the definition of "interpretation." Were it to consider the necessity of interpreting the CBA in evaluating the reasonableness of Defendant's conduct here, the Court would find that merely looking to the CBA to determine whether it contemplated Defendant's conduct does not rise to the level of "interpretation." Furthermore, looking to the CBA simply to determine whether Defendant's behavior was appropriate would appear to serve as a defense to Plaintiff's IIED claim that Defendant could raise back in state court, and the need to consult a CBA for purposes of establishing a defense has been rejected as a basis for the complete-preemption-by-the-LMRA necessary to establish subject matter jurisdiction. *See Burnside*, 491 F.3d at 1060 ("The [Supreme] Court also has made clear that reliance on the CBA as an aspect of a defense is not enough to 'inject[] a federal question into an action that asserts what is plainly a state-law claim.'") (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987); s*ee also Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 999 (9th Cir. 2007) (holding that the plaintiff's IIED claims were not subject to LMRA preemption where the CBA was merely consulted to determine whether the employer's behavior was reasonable).

Here, while the CBA addresses termination policies, neither Plaintiff nor Defendant allege that it contemplates permissible use of those policies as pretext for disability, gender, and age discrimination. *See Galvez*, 933 F.2d at 780 (finding that a plaintiff's IIED claim was not preempted where the employer's assault and battery was not even arguably sanctioned by the labor contract). Indeed, Defendant cannot contend that, notwithstanding its violation of FEHA, any alleged discrimination constituted compliance with the CBA. *See id.* (finding the same). Furthermore, nowhere does Plaintiff ask that the Court determine whether Defendant violated the CBA. Rather, resolution of all her claims turns on whether Defendant's seemingly legitimate use of the CBA's termination provisions were pretext for discrimination.

Defendant's reliance on *Cook v. Lindsay Olive Growers* and *Gonzalez v. Costco Wholesale Corp.* is misplaced. In both *Cook* and *Gonzalez*, the plaintiffs' IIED claims were preempted where they alleged that their employers' policies themselves, and not merely the pretextual application of such policies, were discriminatory. *See Cook v. Lindsay Olive Growers*, 911 F.2d 233, 239 (9th Cir. 1990); *Gonzalez v. Costco Wholesale Corp.*, No. SACV 17-0222 JVS (DFMx), 2018 WL 546679, at *4 (C.D. Cal. Jan. 22, 2018). Therefore, the courts in each case were required to interpret the respective CBAs to determine the reasonableness of the employers' behavior pursuant to the CBA provisions. *See Cook*, 911 F.2d at 239; *Gonzalez*, 2018 WL 546679, at *4.

Because Plaintiff's IIED claim does not require for its resolution an interpretation of the CBA, the Court finds this claim is not subject to the "complete preemption" required to establish federal subject matter jurisdiction. Having found that none of Plaintiff's claims meet the prevailing test for complete preemption, the Court will grant the Motion to Remand.

B. <u>Attorney Fees</u>

Plaintiff asks the Court to award attorney fees pursuant to 28 U.S.C. § 1447(c). Upon an order remanding a case to state court, a district court may award attorney fees only where the removing party lacked an objectively reasonable basis for the removal. *See* 28 U.S.C. § 1447(c); *see also Martin v. Franklin Capital Corp.*, 546 U.S. 132, 132 (2005). "District courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case."[7] *Id.* at 141. "When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be 'faithful to the purposes of awarding fees under §

---

[7] "For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

1447(c).'" *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

Even where a defendant argued that a plaintiff's FEHA claims should be preempted by the LMRA despite every case in the Ninth Circuit holding that an action brought under FEHA is *not* preempted by the LMRA, a court did not find removal to be objectively unreasonable. *See Robles v. Gillig LLC*, 771 F.Supp. 1181, 1184-85 (N.D. Cal. 2011). Indeed, a court's analysis of whether resolution of a plaintiff's claims requires an interpretation of a CBA is "not always clear or amenable to a bright-line test." *See Cramer*, 255 F.3d at 691 (discussing a claim's "substantial dependence on analysis of a CBA" as an inexact concept, turning on the specific facts of each case).

Though Defendant's position is unsupported by the precedent it cites, the Court does not find Defendant's removal on the basis of that case law objectively unreasonable. As such, the Court would deny Plaintiff's request for attorney fees pursuant to 28 U.S.C. § 1447(c).

## IV. Conclusion

Based on the foregoing discussion, the Court would: (1) grant Plaintiff's Motion to Remand, (2) deny Plaintiff's request for attorney fees, and (3) remand this action forthwith back to state court.